All right, now we'll proceed to case number three of the morning. Case appeal number 23-1185, Green Plains Trade v. Archer Daniels Midland. Good morning and may it please the court. My name is John Tengren and I represent the Green Plains plaintiffs, whose complaint detailed below ADM's tortious interference through manipulation of the ethanol futures market and the millions of dollars of losses that Green Plains suffered as a result through more expensive performance of its ethanol sales contracts. This appeal presents a simple issue. May Green Plains state a claim for tortious interference under Nebraska law alleging that ADM's misconduct made its contracts more expensive to perform. Two decisions from Nebraska's highest court, Pettit v. Paxton and Resio v. Evers, answer this question, yes. Even if the Nebraska Supreme Court did not come out and say in so many words, we adopt restatement section 766A, both cases unambiguously establish that Nebraska law allows such a claim. Pettit was the first decision in which the Supreme Court of Nebraska discussed section 766A and a careful reading of that decision reveals that a section 766A claim is available under Nebraska law. In Pettit, the parties embroiled in a family feud got into a bidding war over the purchase of a ranch. Plaintiffs had a purchase agreement in place but then agreed to pay an extra $50,000 when the defendants made a higher offer. Plaintiffs alleged tortious interference with the purchase agreement and sought to recover the extra cost. The court's analysis proceeded in two steps. First, the court asked whether or not the evidence showed that any wrongful act induced or caused a breach or termination of the relationship. The court found that the evidence showed the purchase agreement was performed on a timely basis. But this finding was crucially not fatal to the claim because the court proceeded to the second step in which it addressed the plaintiff's argument that their claim could proceed under section 766A. Although the court does not come right out and say that 766A is available, the fact that the court devotes five paragraphs of its opinion to this argument signals that it is. The court started its discussion by stating that the plaintiff's reliance on section 766A is misplaced not because Nebraska law would not recognize a section 766A claim but because that provision does not apply to the circumstances present in that case. Mr. Tenggren, how do you then explain the court's analysis when it kicks off the legal discussion when it says it sets forth the elements of intentional interference and then it says we went on to acknowledge that one of the basic elements of tortious interference with the business relationship requires an intentional act which induces or causes a brief determination of the relationship? Your reading seems to undercut the paragraph where the Supreme Court actually decides these are the elements that need to be proven. Those remarks should be understood in context of a section 766 claim. When the court wrapped up its discussion... It said we first formally recognized the tort of intentional interference and set forth the elements. Here they are. It set forth as part of the 766 discussion. I think the more logical reading of that opinion is to understand that it was put into two parts. The 766 claim and then the portion of the opinion that begins with the nevertheless. Plaintiff's also alleged 766A claim and it then discusses why that claim doesn't work. Mr. Tenggren, the district court took the view that it really didn't have to get too far into the weeds here because to accept your position would be to expand the current state of Nebraska law and actually afford more relief to a party than current Nebraska law would permit. It cited a series of cases, at least in this court, that it said supported the view that we should always take the more narrow version of law. We shouldn't attempt to expand the law. How do you deal with those cases? We acknowledge that those cases state where there is ambiguity then the more narrower rule should be adopted. But here we respectfully assert that there is no ambiguity that Nebraska law has. Do you put all your eggs in that basket that there's no ambiguity? We do, Your Honor. The court's decision in Railway Express is a really nice illustration of that. In that case, the court was dealing with not two decisions from the state's highest court but simply one, the Wisconsin Power and Light case. That case was very similar to what the Nebraska Supreme Court had done in Pettit and Resio. It held that while there might be a concept allowing for a Section 766A claim or at least a claim similar to what that section would provide for, the plaintiff had not come forward with facts to support it. This court found, despite the fact that the Wisconsin Supreme Court didn't have an occasion to apply it to allow a claim to proceed, that Wisconsin law had nevertheless recognized that 766A claim was available. Let me ask you to indulge me and assume arguendo that there is some ambiguity in the contours of Nebraska law on this point today. If that is true and if we have these cases in our circuit, how do you reconcile those cases in our circuit with the Supreme Court cases that say our obligation is to apply the law as we believe the Supreme Court of the state would apply the law today if it were sitting in our place? It seems to me there's a tension between our cases and the Supreme Court's mandate. How do you deal with that? Sure. I think the tension can be resolved in this way. The best way to understand those cases that counsel in cases of ambiguity choose a narrower rule are cases where it is truly an equipoise. Railway Express, again, may provide a helpful example here. The court's prediction that New York would adopt Section 766A proved out to be incorrect. But if you look at the cases in New York that were present at the time, there was only one decision from New York's highest court and it didn't take a position at all. It said we can't find a case in New York jurisprudence that takes a position one way or the other. In the absence of any information, then perhaps choosing the narrower rule would be advisable. Here, in the Nebraska jurisprudence, we have more indication than this court had in its Wisconsin decision finding that Section 766A would be adopted. If you'll indulge me one more moment. What is your position on certification? We could certify this whole question to the Nebraska Supreme Court and get an answer. The district court, unfortunately Nebraska does not, some states do, allow a district court to certify the issue. We can certify it. Why don't we certify this, get an answer, done. We believe the answer is sufficiently clear, but if this court would appreciate the Nebraska Supreme Court's guidance, we would have no objections. What I'm worried about now, after this oral argument, is whether you're waiving any reliance on ambiguity, but ambiguity that could be resolved in your favor. It seems to me you're telling us not to bother with any of this stuff, any of this ambiguity stuff today. It's not our position that this court shouldn't think about consulting with the Nebraska Supreme Court if that would be helpful to your decision. We acknowledge it's not 100%, but we also acknowledge there are cases where it was less than 100% that was still enough to make the call under Geary. Thanks. If the court has no more questions at this time, I reserve the balance of my time for rebuttal. All right. We will hear from Ms. Coberly. Did I pronounce that correctly? You did, Your Honor. Thank you. Good morning, Your Honors, and may it please the court. The Nebraska courts have never allowed a claim for tortious interference when the contract wasn't breached. It's never happened. And for nearly 50 years, in fact, the Nebraska Supreme Court has consistently insisted that breach is an essential element. And it did so, as the court discussed a moment ago, in the very cases that the plaintiffs are relying on today. It never said it was adopting an exception to the rule that requires a breach in every case. And our brief, we believe, shows that Nebraska law is clear on this. It never rejected it, has it? That's correct, Your Honor. And that's why I think what the district court did here is so important. Even if the law weren't clear, as we contend it is in our favor, the result would be the same. When state law is unclear, this court has instructed district courts to apply the rule that limits liability. The plaintiffs don't dispute that proposition. And you heard that just now. Whenever I hear them read those cases, it reminds me of a philosophy professor I had who, after reading a beautiful text to us, said, this is poetry, and that's all. It seems to me, those cases, okay, are poetry, and that's all. Because they don't reflect what the Supreme Court has said to us, which is, you decide the case today as you think the Supreme Court of that state would decide it today. That's, you know, remember the, you know, everybody, all lawyers, called the eerie guess. Okay? So I'm wondering if, you know, we have to read that. The district court cut and pasted a lot of language out of our opinions. But I wonder if you gave a lot of thought as to what the real limitations to that language are. Well, that's an interesting point, Your Honor. And, of course, plaintiffs haven't taken issue with that case law. I understand. And the court is right, of course, that under the eerie doctrine, the court predicts. But, we still have, in the very cases, that the plaintiffs are relying on an explicit statement that breach of contract is an essential element. You say, in the 50 years, and this is what the cases say, but all of those cases were 766 cases. They weren't 766A cases. And, in fact, the Supreme Court, the Nebraska Supreme Court, takes the time to say in Petit and Resio, we don't have 766A facts here. Now, I have an issue with that in Resio. But that's what the Supreme Court says. So, to me, how far can your insistence that we pay attention to in 50 years, Nebraska Supreme Court has never said this, how far can that take us if those facts simply weren't before the court? Well, first of all, I don't agree that those facts were never before the court. In the Denali case, for example, the claim was that the defendant interfered with the plaintiff's use of the Denali name. Those are 766A facts. And yet, in that case, as well, the Supreme Court held that breach was an essential element. But even if it were correct, Your Honor, that there are no 766A fact pattern cases, which is what the reply brief of the appellants says again and again, that actually supports our position, not the plaintiff's. Because it's the plaintiff's here who need to establish that 766A is or likely would be, under the court's view of Erie, be now part of Nebraska law. There has never been a case under Nebraska law that has recognized this claim. Now, I think it's important to look back at the Railway Express case. This was a significant focus earlier. What was going on in Railway Express? Well, Railway Express was about the law of two states, Wisconsin and New York. This court held that it predicted that New York would adopt 766A because of lower court decisions in New York that had already done so. And as it turned out, the court was actually wrong about that. That prediction proved to be wrong later when the Supreme Court or the Court of Appeals of New York did not adopt 766A. But at least at that time, there was reason to believe, this court found reason to believe that New York would adopt 766A because lower courts had actually done so. So what about Wisconsin? Council relied heavily on this, I'm calling it the Gherke case, but it's the Wisconsin Board of Power and Light or something like that. That case did not ultimately find a 766A claim in that case. But what the court said was different. In Railway Express, this court relied very specifically on language from the Gherke case in Wisconsin in which the Supreme Court of Wisconsin specifically said quote, we have no difficulty with the concept of the cause of action that the plaintiff is asserting but we do not find it satisfied here. I don't see here where the Nebraska Supreme Court has difficulty with the idea of a 766A. A contract being more difficult and more expensive to perform. Can you point me to something in these two decisions where the Supreme Court has an issue with it or suggests it's you know not viable or poor lawyering or considering this as a hypothetical. We don't have any language like that. There's no language about this either way. There's no language about it either adopting it or not adopting it. All the court did is said the plaintiff made this argument based on 766A even on its terms 766A doesn't apply here and there's simply no language either way predicting whether the court would adopt that provision. 766A is somewhat controversial and that's why court after court including this court and Fuller have declined to say that a state court would adopt 766A unless the state court has done so and has given strong indication that it would do so. That's what the Wisconsin Supreme Court did in Gerkey when it said affirmatively we have no difficulty with the concept of the cause of action. This court didn't need to guess about that. The Wisconsin Supreme Court specifically said it had no difficulty. We don't have that kind of clear language in the Pettit case. We don't have it in the Rescio case. That's the reason we're here. I find that somewhat circular. We are here because there is no clear language. So the question is with the language we have what do we make of it? What we make of it at best Your Honor is that it's ambiguous and this court has said again and again that it is not the place of this court to take state law in a direction that the state courts haven't taken it yet. Assuming arguendo that that's the whole complete statement of the law why don't we just certify this get an answer and be done with the whole thing? Well it's interesting Your Honor. No one has ever asked for that in this case and actually if I could just correct one thing respectfully my understanding is that the Nebraska Supreme Court will take a certified question in Nebraska revised statute 24. It will but only from this court not the district court. No. It will also take it from a federal district court I believe. That's not what we've been able to find but if it will that makes this case even easier we can vacate it, remand it to the district court, tell them to certify it. Well but there are other reasons Your Honor why certification wouldn't be appropriate and I think the fact that no one's ever asked for it reflects the fact that we understand this is a poor candidate for certification but that's our choice we can do it sua sponte. Yes correct but first and I agree with that Your Honor but the court does it will do it sua sponte or even at the request of parties only when the issue is controlling and here it is not. The word in the statute in Nebraska is may be controlling why isn't this controlling? I'm referring to this court's rule 52 circuit rule 52 about certification which calls, which looks at whether the issue is controlling here's why it's not controlling for two reasons Your Honor. First of all the plaintiff's pleading failure doomed their tortious interference claim no matter how this legal issue comes out. But the district court said he would give them the opportunity to replead but for this 766A issue. And we have argued Your Honor and our brief argues and I'm prepared to talk about it more today that leave to replead actually isn't appropriate here but even if it were sitting here today we have a complaint that's defective there's a complaint that is defective that couldn't state a claim even under 766A and by the way this is not the first complaint in this case. This is the second complaint in this case and critically this complaint, this new lawsuit the same identical lawsuit refiled again in Nebraska was filed at a time when a motion to dismiss on this very issue had already been resolved in the central district of Illinois by the very same judge so the argument the plaintiffs have made for leave to replead is we're entitled to replead after we get a ruling on a motion to dismiss so we know what's wrong with our complaint. They already had that ruling they got that ruling in September 2021 in the United Wisconsin case which is the same judge on the same facts in the same partially consolidated litigation. That ruling said I will require you to identify a contract that the defendant knew about in order to state a claim for tortious interference with contract and it was a month later that these plaintiffs went back to Nebraska refiled a complaint and again did not identify any contracts or plead that ADM knew about them. This is a critical fact these plaintiffs have not even today said that they will and can identify all the contracts and plead in good faith that ADM actually knew about them. Why? Because that's not their theory. What they have offered to do even in this court is to go back to the district court to plead summaries and examples of contract they say that specifically in their brief at the end they said it in the district court. All they have offered to do is plead examples and summaries. That is not sufficient to plead a claim for tortious interference which requires a specific contract that is identified in the complaint and that the defendant specifically knew about. If these plaintiffs got into the business of trying to identify specific contracts it would quickly become apparent that ADM did not and could not have actually known about them which is the test for tortious interference. So all of this we discussed your honors in the context of certification but this pleading issue is a really serious problem. We think it actually provides a sufficient basis for this court to affirm the dismissal with prejudice and we've explained that in our briefs but at a minimum it makes this case a poor candidate for certification and there's one other reason. If the Nebraska Supreme Court, two actually if the Nebraska Supreme Court were to now recognize the 766A exception to the breach requirement it's not clear Nebraska law would apply. We have specifically said in this case that we are we are assuming for purposes of these motions that Nebraska law would apply and that's partly because we don't think there's a conflict between Nebraska law and Illinois law in this issue. But if Nebraska were to adopt 766A there would be a conflict. Why do you think that Illinois law applies? Because all of this is about conduct that relates to sales at the Argo terminal outside Chicago. I see. And we haven't seen the contracts. We don't know what the terms are. We don't know who the counterparties are so we can't analyze today. We don't even the plaintiffs haven't identified them so we can't analyze today what law would apply to those contracts But what I can tell you is if you look at the allegations of conduct in the complaint it's all about Argo. Do you know whether those contracts have a choice of law clause? We don't know what the contracts are your honor because the plaintiff's complaint doesn't identify them. So that's all the more reason why it was appropriate to assume for the sake of these motions that Nebraska law would apply. But if there were a certification and Nebraska law didn't apply then the next issue for the court would be Was that all a frolic in G2? But all compounds are on ease too because this case may have been decided on a hypothetical question really. And it was decided based on the arguments that the parties presented and in particular the arguments that the plaintiff presented. And the role of this court is to apply to address the arguments the parties have presented. There's one other issue that makes this a case of poor candidate for certification and that is that section 766A in the second restatement has been superseded. The American Law Institute has now published the restatement third of torts which replaces 766, 766A 766B, 767 etc. with a different analysis under restatement third 17. And what does that say? That section apologies That section your honor which has never been briefed in this case provides for a defendant to be subject to liability for interference with a contract if a valid contract, a valid contract existed, if the defendant knew of the contract if the defendant engaged in wrongful conduct which is a new concept that's defined specifically to include independent and intentional legal wrong and the defendant intended to cause a breach of the contract or disruption of its performance and that the defendant's wrongful conduct actually caused a breach of the contract or disruption of its performance Disruption of its performance is a little bit different than what the plaintiff is claiming here. These contracts according to the plaintiffs again we don't, we haven't seen them they haven't been identified but according to the plaintiffs these contracts specifically incorporated the ARGO price with some adjustment Has this, has the new restatement actually been promulgated by the AOI? It has your honor it has not been addressed yet in any cases in any cases and so the question for, this is inappropriate because it's unclear what impact the Pettit issue, the 766A issue or any of that would have for the future given that there's now a new restatement and I would argue by the way that if we were to get to the second, to the third restatement, these contracts were not disrupted they performed exactly as plaintiffs say they should have performed the plaintiffs chose to put the ARGO price in the contract the ARGO price changed but the contracts operated exactly as the way the plaintiffs designed them to by using the ARGO price as the basis allegedly for sales Okay, thank you Ms. Coverley Thank you very much your honor Mr. Tangren, I didn't ask you how to pronounce your name three minutes Gee sir, we have a lot of things percolating up here that don't seem to have been before the district court Do you have a waiver problem here? I don't believe so your honor I'll do my best to tie up some of the loose ends that were remaining after ADM's counsel argument Our position is that this issue of Nebraska law is controlling and none of the reasons by ADM claims it wouldn't be actually apply First of all, on the choice of law issue, ADM has never argued before today here in argument that Illinois rather than Nebraska law applies. The parties haven't briefed the issue. I'll note briefly that we do believe Nebraska law ought to apply because Green Plains is domiciled in Nebraska where ADM's tortious conduct was directed and the normal rule for choice of law is that the state where the tortious conduct was directed, that's the state where that law would apply Is there a choice of law clause in any of these contracts? Our position would be that because this is a tort claim it's with the contract but it's where the tortious conduct is directed that is most important for that process So you would characterize this as a tort? That's correct Exactly Are all of the counterparties to your client's contracts in Nebraska as well? Because presumably they would also feel the impact of the alleged tortious interference No, they're nationwide and as I'm sure ADM would point out because they paid lower prices they benefited from the conduct rather than were harmed by it Briefly on restatement section 17 and restatement 3rd of torts this section was the American Law Institute's attempt to take what was originally 766 and 766A and just combine them into a single section to better reflect where the law is evolving to Comment A to that section states that there was no substantial modification to the rule of law itself that was intended by that section So because the Nebraska case law cites to 766A we believe that it makes the most sense to proceed with 766A unless and until Nebraska shifts gears and starts referring to section 17 And finally the other pleading issues that ADM discussed in its argument are also not dispositive here As Judge Jackson-Akumi pointed out the district court did indicate that it would give Green Plains leave to amend its complaints if the 766A issue was not dispositive. Green Plains is prepared now that we have seen that we have the benefit of the district court's views on the complaint to make those amendments It's not correct that we would again simply do summaries of the contracts. We do intend now that we know what the district court's views on this are to list out the specific contracts even though it would be a rather cumbersome exercise I should also note that in our brief we do argue that the district court's findings were incorrect on that view but we don't believe that that really means that the Nebraska law isn't a controlling issue regardless So for all of those reasons, we don't believe that the Nebraska legal issue shouldn't be considered controlling. In fact, it is the issue on which this appeal hinges and we welcome either this court's or the Nebraska Supreme Court's opinion on it Your colleague on the other side indicated that whether you get to amend this complaint on any remand Chancellor, what are your views on that? We believe that the district court was clear that it would allow leave to amend and we believe that that ruling is consistent with Rule 15 in this court's decisions in Zimmerman and Runyon Thank you Alright, we thank the parties and the case will be taken under advisement